PELLETTIERI, RABSTEIN & ALTMAN
Arthur Penn (AP 2952)
100 Nassau Park Boulevard
Suite 111
Princeton, New Jersey 08540
(609) 520-0900

**FILED**

10-23-03

AT 8:30_____M
WILLIAM T. WALSH
CLERK

LOCAL COUNSEL FOR PLAINTIFF
  FOSS AND THE PROPOSED CLASS

CHIMICLES & TIKELLIS LLP
James R. Malone, Jr. (JM 2058)
Ramona M. Mariani (RM 8543)
(A Member of the Bar of this Court)
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
(610) 642-8500

COUNSEL FOR PLAINTIFF FOSS
  AND THE PROPOSED CLASS

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

EDWARD FOSS, on behalf of himself      :      Civil Action No. 03 - 5017
and all others similarly situated,     :                   ( J W B )
                                       :
            Plaintiff,                 :
                                       :
    v.                                 :      CLASS ACTION
                                       :
LUCENT TECHNOLOGIES INC.;              :
LUCENT RETIREMENT INCOME               :
PLAN; LUCENT TECHNOLOGIES, INC.        :
EMPLOYEE BENEFITS COMMITTEE;           :
COLLETTE CHILTON; RALPH                :
CRAVISO; JOHN HICKEY; and              :
PAMELA O. KIMMET,                      :
                                       :
            Defendants.                :

## COMPLAINT

For his Complaint, plaintiff Edward Foss ("Plaintiff" or "Foss") alleges as follows:

### INTRODUCTION AND OVERVIEW

1.      This is a Class Action brought by plaintiff Edward Foss, 25 East Cheyenne Mountain Boulevard, Colorado Springs, CO 80906, under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1465 on behalf of retirees whose right to have a death benefit paid to their spouse or other dependents in an amount equal to one year's salary was eliminated by defendant Lucent Technologies Inc. in an amendment to its pension plan that went into effect on February 1, 2003.  Lucent Technologies Inc. and the other defendants are located at 600 Mountain Avenue, Murray Hill, New Jersey 07974.

2.      Plaintiff bases this Complaint upon the investigation of counsel, the relevant plan documents and plan communications disseminated by Lucent Technologies Inc., as well as relevant Securities and Exchange Commission filings and other public data.

3.      The allegations and other factual contentions contained in this Complaint either have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for discovery.

### JURISDICTION AND VENUE

4.      Plaintiff brings this action pursuant to Section 502(a)(2), (3) of ERISA, 29 U.S.C. § 1132(a)(2), (3) and federal common law.  This Court has jurisdiction over the subject matter of this action pursuant to Section 502(f) of ERISA, 29 U.S.C. §1132(f), as well as 28 U.S.C. §§ 1331, 1337.

5.      Defendant Lucent Technologies Inc. maintains its principal place of business within this district at 600 Mountain Avenue, Murray Hill, New Jersey 07974.  Accordingly, venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §§ 1132(e)(2), as Lucent Technologies Inc. resides or may be found within this district.  Further, venue is proper in this

district because the relevant employee benefit plan is administered, in whole or in part, within this district, and the violation of plaintiff's rights took place, in whole or in part, within this district.

## PARTIES

6.      Plaintiff Edward Foss ("Plaintiff" or "Foss") is an individual who resides in Colorado Springs, Colorado. Foss was formerly employed at AT&T Information Systems until he retired in November, 1985. At the time Mr. Foss retired, he was a participant in the AT&T Management Pension Plan. In 1996, AT&T's obligations to Mr. Foss under its Management Pension Plan were transferred to Defendant Lucent Technologies Inc. in a restructuring transaction. Mr. Foss is a current participant in the Lucent Retirement Income Plan and, until that plan was amended effective February 1, 2003, had been entitled to have a death benefit paid to his spouse (or other dependents) from the assets of the plan.

7.      Defendant Lucent Technologies, Inc. ("Lucent" or the "Company") is a Delaware Corporation with its principal place of business at 600 Mountain Avenue, Murray Hill, New Jersey 07974. Lucent was incorporated in November 1995 in conjunction with a proposed spin-off by AT&T Corp. ("AT&T") of certain assets.

8.      Defendant Lucent Retirement Income Plan is a defined benefit pension plan established pursuant to the terms of ERISA. The Lucent Retirement Income Plan is the successor in interest to the AT&T Management Pension Plan, a defined benefit pension plan established by AT&T, and the Lucent Technologies Inc. Management Pension Plan, a defined benefit pension plan previously established by Lucent. Lucent serves as both the plan administrator and plan sponsor of the Lucent Retirement Income Plan. Lucent is a named fiduciary under the Lucent Retirement Income Plan.

9.      Defendant Lucent Technologies Inc. Employee Benefits Committee (the "Committee") is a body appointed by Lucent which serves certain designated plan administration

3

functions under the Lucent Retirement Income Plan. The Committee is a named fiduciary under the Lucent Retirement Income Plan.

10.     Defendant Collette Chilton is Lucent's Chief Investment Officer. On information and belief, Defendant Chilton is a member of the Committee. In that capacity, Chilton is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

11.     Defendant Ralph Craviso is Lucent's Vice President, Workforce Effectiveness. On information and belief, Defendant Craviso is a member of the Committee. In that capacity, Craviso is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

12.     Defendant John Hickey is Lucent's Vice President, Compensation and Benefits. On information and belief, Defendant Hickey is a member of the Committee. In that capacity, Hickey is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant Pamela O. Kimmet is Lucent's Senior Vice President of Human Resources. On information and belief, Defendant Kimmet is a member of the Committee. In that capacity, Kimmet is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

14.     Defendants Chilton, Craviso, Hickey and Kimmet are hereinafter sometimes referred to as the "Individual Defendants."

## THE AT&T MANAGEMENT PENSION PLAN

15.     At times relevant to this action, AT&T maintained a defined benefit pension plan for its non-unionized employees, which was known as the AT&T Management Pension Plan. The AT&T Management Pension Plan was established by AT&T and its subsidiaries "to provide for the payment of definite amounts to their respective employees when they are retired from service or in the event of death, to their dependent relatives, or in certain cases to their annuitants, or to former employees when they become entitled to deferred vested pension payments or in certain cases to

their annuitants." AT&T's unionized employees were covered by one or more separate pension plans, the terms of which were established through collective bargaining.

16. Vested participants in the AT&T Management Pension Plan were entitled to receive a pension commencing at age 65 which was based upon a formula taking account of their annual compensation and years of service. Under this deferred vested pension, retirees received an annual pension of 1.6 percent of their adjusted career income, a calculation which took account of average compensation over a base period, years of credited service through the end of the base period, and aggregate compensation from the end of the base period through the date of retirement.

17. In addition, the AT&T Management Pension Plan had a provision for a service pension. The service pension was set at 1.6 percent of the participant's adjusted career income, which would become payable once the participant met the following age and service requirements:

| AGE | NET CREDITED SERVICE |
|---|---|
| Any age | 30 years |
| 50 | 25 years |
| 55 | 20 years |
| 65 | 10 years |

18. The AT&T Management Pension Plan also provided for a disability pension in an amount equal to 1.6 percent of the participant's adjusted career income. The disability pension was available to participants who had completed 15 years of net credited service who were disabled when their employment terminated. The disability pension was payable so long as disability prevented the retiree from returning to work.

19. Under the AT&T Management Pension Plan, the normal form of payment for a service pension or a disability pension was a reduced pension to the participant with a survivor annuity payable at death to the participant's surviving spouse. Under this form of payment, the

5

participant would receive 90 percent of his or her pension for life, and the spouse would receive 50 percent of the reduced pension for the balance of his or her life time. This survivor annuity could be declined in writing, and participants had a 90-day election period prior to their retirement date in which to elect whether to decline the survivor annuity. After the election period closed, the participant could not alter his or her decision.

20.     The AT&T Management Pension Plan also included death benefits as an integral element of the service pension and disability pension. As the summary plan description dated as of January 1, 1984 explained, "your qualified beneficiaries are protected by the Plan's sickness and accident death benefit provisions for the entire period of your employment and during your retirement on service or disability pension." The summary plan description specifically indicated that every participant who retired and received a service pension or disability pension was entitled to have a death benefit paid to his or her surviving spouse or to other dependent relatives:

> A benefit equal to one-year's pay at retirement will be paid to the mandatory beneficiary (if any) of an employee who dies after retirement while receiving a service or disability pension.
>
> Mandatory beneficiaries for this benefit are:
>
> • your legal spouse, if living with you at the time of death, or
> • your unmarried, dependent children up to age 23 or age 23 and over if disabled and incapable of self-support or
> • a dependent parent living with you or in a separate household that you provide in the vicinity of your home.
>
> If you are survived by more than one of the above mandatory beneficiaries, the Participating Company Benefit Committee, in its discretion, will determine whether to authorize the payment of the maximum death benefit amount to one beneficiary or to apportion the total death benefit between some or all of the surviving mandatory beneficiaries.

21.     The AT&T Management Pension Plan required a claim for death benefits to be filed within one year of the death of the participant.

## PLAINTIFF'S INTEREST
## IN THE AT&T MANAGEMENT PENSION PLAN

26.     On November 1, 1985, Plaintiff Foss, a participant in the AT&T Management Pension Plan, retired from AT&T Information Systems with 28 years of net credited service.

27.     At the time he retired, Mr. Foss was eligible for a service pension under the terms of the AT&T Management Pension Plan. Once he retired on a service pension, plaintiff was entitled to have the death benefit provided by the AT&T Management Pension Plain paid to his spouse or other dependents upon his death.

28.     Because of the provision for the death benefit, Mr. Foss declined the survivor annuity option for the payment of his service pension. This election became irrevocable upon his retirement. As a consequence, Mr. Foss was thereafter entitled to receive his full service pension without reduction, plus a death benefit to be paid to his spouse (or other mandatory beneficiary) in the amount of his final year's salary.

## CREATION OF LUCENT

29.     Lucent was incorporated in Delaware in November 1995. Lucent was formed following the announcement by AT&T in September 1995 of its intention to create a separate company comprised of the AT&T systems and technology businesses and operations. On February 1, 1996, AT&T began executing its decision to separate Lucent into a stand-alone company by transferring assets and liabilities to it. On April 10, 1996, Lucent issued 112,037,037 shares of its common stock in an initial public offering, and, thereafter, on September 30, 1996, AT&T distributed all of its shares in Lucent to AT&T shareholders of record.

30.     AT&T's spin-off of Lucent was a significant corporate transaction which dramatically changed the scope of its operations and the number of its employees. According to its Form 10-K for the fiscal year ended December 31, 1995 (the fiscal year preceding the conclusion of the spin-off) AT&T at that time employed approximately 300,000 people, 250,000 of whom were

8

employed in the United States. Thirty-eight percent of those domestic employees were represented by unions. Therefore, as of December 31, 1995, approximately 155,000 AT&T employees were covered by the AT&T Management Pension Plan.

31.     The spin-off of Lucent dramatically reduced the number of AT&T's employees. According to AT&T's Form 10-K for the fiscal year December 31, 1996, at that time, AT&T employed 130,000 people, 124,000 of whom were employed in the United States. Forty-one percent of those domestic employees were represented by unions. Therefore, as of December 31, 1996, approximately 76,060 AT&T employees were covered by the AT&T Management Pension Plan, a reduction of slightly over half.

32.     The vast bulk of these employees were transferred to Lucent. According to Lucent's Form 10-K for the fiscal year ending September 30, 1996, it had 124,000 employees, of which 79 percent were in the United States. Of its 97,960 domestic employees, Lucent indicated that 46 percent of them were unionized. Therefore, as of September 30, 1996, Lucent had approximately 52,898 management employees who would ultimately be covered by its newly-formed Management Pension Plan.

33.     The spin-off of Lucent from AT&T triggered a vertical partial termination of the AT&T Management Pension Plan. The partial termination of the Management Pension Plan triggered AT&T's obligation under Section 4, paragraph 10 of the AT&T Management Pension Plan to make provision for the payment of death benefits as hereinabove alleged.

34.     At the time of the spin-off of Lucent from AT&T, the AT&T Management Pension Plan was substantially over-funded. Defendant Lucent desired the benefit of the excess pension assets in the AT&T Management Pension Plan that related to the business units that were being transferred to it under the spin-off, as these excess pension assets could be used to fund benefits for its employees that accrued in the future.

9

35.     The ability of AT&T and Lucent to transfer assets from the AT&T Pension Plan was limited by Section 208 of ERISA, 29 U.S.C. § 1058, which provides in relevant part as follows:

> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan after the date of the enactment of this Act, unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit it would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated).

29 U.S.C. § 1058.

36.     As part of the process in which Lucent was formed and then spun-off to AT&T shareholders, AT&T and Lucent entered into an agreement (the "Employee Benefits Agreement") to govern the employee benefit obligations of Lucent including both compensation and benefits, with respect to active employees and retirees who were assigned to the Company. Under the Employee Benefits Agreement, Lucent "assumed and agreed to pay, perform, fulfill and discharge, in accordance with their respective terms, all Liabilities (as defined), to or relating to former employees of AT&T or its affiliates employed by the Company and its affiliates and certain former employees of AT&T or its affiliates (including retirees) who either were employed in the Company Business (as defined) or who otherwise are assigned to the Company for purposes of allocating employees benefit obligations (including all retirees of Bell Labs)."

37.     Under the terms of the Employee Benefits Agreement, Lucent was required to establish plans that mirrored the terms of the corresponding AT&T Plans; these plans would serve as successors in interest to the corresponding AT&T plans. This was necessary so that the transfer of plan assets and plan liabilities from the AT&T Management Pension Plan would comply with Section 208 of ERISA, 29 U.S.C. § 1058. For those individuals for whom Lucent was assuming the obligations of the AT&T Management Pension Plan, all service, all compensation and all other benefit-effecting determinations that were recognized under the corresponding AT&T plan would receive full recognition, credit, and validity and be taken into account under the Lucent plan.

10

38.     The Employee Benefits Agreement explicitly provided that Lucent's receipt of assets from the AT&T Management Pension Plan was conditioned upon its assumption of all of the AT&T Management Plan's liabilities: "the provisions of this Agreement for the transfer of assets from certain trusts relating to AT&T Plans (including Foreign Plans) to the corresponding trusts relating to Lucent Plans (including Foreign Plans) are based upon the understanding of the parties that each such Lucent's Plan will assume all Liabilities of the corresponding AT&T Plan to or relating to Transferred Individuals, as provided for herein."

## ESTABLISHMENT OF THE
## LUCENT MANAGEMENT PENSION PLAN

39.     In accordance with the terms of the Employee Benefits Agreement, effective October 1, 1996, AT&T transferred assets to Lucent in an amount commensurate with the liabilities that Lucent assumed that were owed to participants in the AT&T Management Pension Plan.  In return for accepting the designated liabilities of the AT&T Management Pension Plan, Lucent received a distribution from AT&T's Group Pension Trust of assets sufficient to meet the minimum requirement set forth in applicable benefit and tax regulations, a sufficient amount of additional assets to ensure that, as of October 1996, Lucent complied with AT&T's previously established pension funding policy, as well as one-half of any remaining trust assets in excess of the funding policy level.

40.     The liabilities that Lucent assumed under the Employee Benefits Agreement with AT&T included the liabilities of the AT&T Management Pension Plan for death benefits to participants who were retired and receiving either a service pension or a disability pension that were Transferred Individuals under the Employee Benefits Agreement.  The assets transferred to Lucent under the Employee Benefits Agreement included assets intended to fund these death benefits. According to Lucent's Form 10-K for the fiscal year ended September 30, 1997, it assumed $21,269 million in liabilities and received $29,805 million in assets under the Employee Benefits Agreement.

11

41.     On information and belief, in accordance with the provisions of the Employee

Benefit Agreement, Lucent established a defined benefit pension plan known as the Lucent

Technologies Inc. Management Plan (the "Lucent Management Pension Plan") which mirrored the

provisions of the AT&T Management Pension Plan.  The Lucent Management Pension Plan

included a death benefit, which the Company recently described as follows:

> The current death benefit provisions of the Management Pension Plan provide a
> death benefit equal to twelve months pay at retirement, but the benefit is payable
> only to a retiree's qualified mandatory beneficiary or beneficiaries.  Mandatory
> beneficiaries are the retiree's lawful spouse at the time of death, unmarried children
> under the age 23 (or over the age of 23 if incapable of self-support), and dependent
> parents.

42.     In 1997, Lucent amended its Management Pension Plan effective as of January 1,

1998 to eliminate the death benefit for management employees who retired on or after January 1,

1998.  While Lucent amended the plan to eliminate the death benefit for management employees

who retired after January 1, 1998, it maintained the death benefit for those who had previously

retired.

43.     The Lucent Management Pension Plan in effect as of January 1, 1998 provided that

it was established by Lucent and certain of its divisions, units or subsidiaries "to provide for the

payment of definite amounts to their respective Participants (as defined in Article 2) when they are

retired from service or, in the event of death of any such Participants who have Terminated

Employment prior to January 1, 1998, to their dependent relatives, or in certain cases to their

annuitants, or to former Participants when they become entitled to deferred vested pension

payments, or in certain cases to their annuitants."  The Lucent Management Pension Plan also

indicated that "for Transferred Individuals who Terminate Employment before October 1, 1996, the

provisions of the AT&T Management Pension Plan in effect at termination of the Transferred

Individual's employment as incorporated in the Prior Plan shall govern."

44.     The Lucent Management Pension Plan in effect as of January 1, 1998 provided that plan trustees were responsible for paying pensions and death benefits from the assets of the plan.

45.     The Lucent Management Pension Plan in effect as of January 1, 1998 indicated that the death benefits were part of the Company's funding obligations:

> The Company and the other Participating Companies undertake to maintain the Pension Fund so long as the said Plan shall continue, by periodic charges to operating expenses and payments to the Pension Fund which meet the requirements of the law and in such amounts that there will be available in the Pension Fund amounts sufficient to provide for the service pensions, deferred vested pensions, payments to annuitants in accordance with Section 4.3, and death benefits payable from the Pension Fund under the Plan, in the amounts stated in the Plan. The amounts of these periodic charges to operating expenses and payments to the Pension Fund will be determined on the basis of an annual actuarial valuation using the aggregate cost method.

46.     The Lucent Management Pension Plan in effect as of January 1, 1998 further provided that, upon termination or partial termination of the plan, after making the payments required by Section 4044 of ERISA, 29 U.S.C. § 1344, and making adequate provision for the amounts due for service pensions and deferred vested pensions under the plan, plan assets were to be applied as follows:

> Second, to making provision for the payment of death benefits consistent with Article V upon the deaths of eligible Participants who are on the pension roll as of the date of termination, of death benefits which would have been payable from the Pension Fund, had the Plan not been so terminated.

47.     In contrast, the Lucent Management Plan in effect as of January 1, 1998 contained a provision for post-retirement healthcare benefits. This provision set up a separate account to fund post-retirement healthcare benefits. The provisions of the Lucent Management Pension Plan as of January 1, 1998 explicitly indicated that retiree healthcare benefits were not an "accrued benefit" and that the Company had no ongoing obligation to fund those benefits.

48.    Effective January 1, 2000, Lucent again amended its Management Pension Plan; the amendments at this time created an account balance feature which would apply to employees hired after January 1, 1999, and changed the name of the plan to the Lucent Retirement Income Plan.

49.    The Lucent Retirement Income Plan in effect as of January 1, 2000 maintained the death benefit for participants who retired prior to January 1, 1998.  The Lucent Retirement Income Plan also provided that "for Transferred Individuals who Terminate Employment before October 1, 1996, the provisions of the AT&T Management Pension Plan in effect at termination of the Transferred Individual's employment as incorporated in the Prior Plan shall govern."

50.    The Lucent Retirement Income Plan in effect as of January 1, 2000 again provided that the trustees were to make payments for pension and death benefits out of plan assets.

51.    The Lucent Retirement Income Plan in effect as of January 1, 2000 provided that the Company's obligations to contribute to the plan included amounts necessary to fund death benefits:

> The Company and the other Participating Companies undertake to maintain the Pension Fund so long as the said Plan shall continue, by periodic charges to operating expenses and payments to the Pension Fund which meet the requirements of the law and which are in such amounts that there will be available in the Pension Fund amounts sufficient to provide for the service pensions, deferred vested pensions, payments to annuitants in accordance with Appendix A 1.3, payments to participants under the ABP in accordance with Appendix B and death benefits payable from the Pension Fund under the Plan, in the amounts stated in the Plan.

52.    The Lucent Retirement Income Plan in effect as of January 1, 2000 further provided that upon termination or partial termination of the plan, after making the payments required by Section 4044 of ERISA, 29 U.S.C. § 1344, and making appropriate provision for the payment of the amounts due to service pensions and deferred vested pensions, plan assets were to be applied as follows:

> Second:  to making provision for the payment of death benefits attributable to deaths occurring prior to the date of termination which would have been payable from the Pension Fund, and for the payment upon the deaths of retired Employees who are on the Pension roll as of the date of termination of death benefits which

14

would have been payable from the Pension Fund, had the Plan not been so terminated.

## LUCENT AMENDS THE RETIREMENT
## INCOME PLAN TO ELIMINATE THE DEATH BENEFIT

53.     On or about January 2, 2003, Lucent sent a letter signed by Defendant Kimmet to every retiree indicating that it was eliminating the death benefit. The letter to retirees enclosed a set of questions and answers, which indicated, among other things, that by eliminating the death benefit, Lucent would be able to avoid or limit its pension plan funding obligations. Specifically, the Company indicated that it would "conserve approximately $35 million in pension assets annually, for a number of years, and reduce the present value of our management pension plan's funding obligation by about $400 million. Most important, the elimination of the death benefit reduces the likelihood that we would have to make a contribution to the plan in the near future." A true and correct copy of the letter and enclosure are attached hereto as Exhibit A. This communication made the unqualified statement that the death benefit was an ancillary benefit provided at the discretion of the Company, and also indicated that the Company was free to terminate the death benefit for former AT&T retirees who were assigned to Lucent.

54.     The amendment to the Lucent Retirement Income Plan eliminating the death benefit went into effect as of February 1, 2003. A true and correct copy is attached hereto as Exhibit B. This amendment (the "Plan Amendment") provided in relevant part as follows:

1.     Article V of the Plan as amended and restated as of January 1, 1998, entitled "Death Benefits," is hereby deleted in its entirety with respect to retirees who die on or (sic) February 1, 2003.

2.     Any provision of any predecessor or prior version of the Plan that may have provided or authorized the payment of a death benefit upon the death of a retiree who retired before January 1, 1998 is hereby deleted in its entirety with respect to retirees who die on or after February 1, 2003.

15

55.     The Plan Amendment also altered the duties of the plan trustees by eliminating their responsibility to pay death benefits; it amended the sections of the plan governing pension funding policy and method to eliminate references to the obligation of Lucent to provide sufficient funds to pay death benefits; and it revised the provisions of the plan governing payments on termination or partial termination to eliminate the obligation to fund death benefits upon termination or partial termination.

## EXHAUSTION OF REMEDIES

56.     Shortly after he was notified that Lucent had adopted the Plan Amendment and eliminated the death benefit, on January 6, 2003, Plaintiff Foss directed a letter to Defendant Kimmet, protesting the elimination of the death benefit. A true and correct copy of this letter is attached hereto as Exhibit C. Plaintiff Foss directed his January 6 letter to the post office box that was listed as the return address on the envelope in which Defendant Kimmet's January 2 letter had been sent to him.

57.     On or about May 19, 2003, Defendant Kimmet wrote to Plaintiff Foss in response to his January 6 letter. A true and correct copy of this May 19 letter is attached hereto as Exhibit D. In her response to Mr. Foss, Defendant Kimmet emphasized that the decision to eliminate the death benefit was made "after long and careful deliberation."

58.     Kimmet's letter offered no substantive reason for the elimination of the death benefit beyond the cost savings Lucent would enjoy if it could avoid contributing to the Lucent Retirement Income Plan; it failed to reference any pertinent plan provision authorizing the elimination of the death benefit; it failed to describe any additional material or information that might be necessary for Mr. Foss to perfect a claim; and it failed to provide appropriate information as to the steps to be taken if he wished to submit a claim for further review.

59.     Plaintiff Foss has either exhausted his administrative remedies under the Lucent

Retirement Income Plan, or, in the alternative, further resort to such remedies is excused for the

following reasons:

a.     Lucent, the Committee, and the Individual Defendants have made an across

the board determination "after long and careful deliberation" that no further death benefits will be

paid;

b.     the Lucent Retirement Income Plan has formally been amended to eliminate

the provision for the death benefit; as a consequence, Lucent, the Committee, and the Individual

Defendants could not authorize the payment of a death benefit without expressly contravening the

specific terms of the Lucent Retirement Income Plan;

c.     the Plan Amendment eliminated the authority of the plan trustees to pay

death benefits out of plan assets;

d.     the Employee Benefits Agreement does not grant to Lucent, the Committee

or the Individual Defendants broad discretion to construe its terms, thereby obviating one of the

main  reasons for requiring exhaustion;

e.     the death benefit is presently not payable as Plaintiff Foss is alive, but he is

on notice that Lucent will refuse to pay it in the future, thereby creating a risk that the statute of

limitations on his claims will expire prior to the time when the death benefit actually becomes

payable to his spouse or other dependent relatives;

f.     further, as Lucent has indicated that it eliminated the death benefit to avoid

making contributions to the Lucent Retirement Income Plan, the prospect exists that, as of the time

when the death benefit properly becomes payable, the Lucent Retirement Income Plan will lack

sufficient assets to pay it;

17

g.      Plaintiff's statutory claims under ERISA and his federal common law claims are not subject to an exhaustion requirement.

60.     Based upon the foregoing, Plaintiff's current invocation of the judicial process is reasonable under the totality of the circumstances.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff Foss brings this action as a class action on behalf of all persons who were former AT&T Management Pension Plan participants who terminated their employment prior to October 1, 1996 and who, as of February 1, 2003, were entitled to receive a service or disability pension to be paid from the assets of the Lucent Retirement Income Plan; their spouses, unmarried children under the age of 23, children incapable of self-support or dependent parents (the "Class").

62.     The Class is so numerous that joinder of all members is impracticable; while the precise number of Class members is not known to Plaintiff, it is believed that the Lucent retirees and their beneficiaries that would be included in the Class number in the thousands.

63.     There are questions of law or fact common to the Class, including the following:

a.      whether Lucent, the Committee, and the Individual Defendants violated their fiduciary duties under Section 404(a)(1)(D) of ERISA when they purported to amend the Lucent Retirement Income Plan to eliminate the death benefit owed to the members of the Class;

b.      whether the death benefit provided under the AT&T Management Pension Plan and the Lucent Management Pension Plan was an accrued benefit protected pursuant to Section 204(g) of ERISA;

c.      whether Lucent violated Section 204(g) of ERISA when it amended the Lucent Retirement Income Plan to eliminate the death benefit;

d.      whether Lucent has violated the Employee Benefits Agreement and, consequently, federal common law;

18

e.     whether Lucent, the Committee, and the Individual Defendants have breached their fiduciary duty of disclosure;

f.     whether the members of the Class are entitled to relief and the form and extent of the relief which they should receive.

64.     Plaintiff Foss's claims are typical of the claims of the Class.

65.     Plaintiff Foss will fairly and adequately protect the interests of the Class as he holds no adverse interest to the Class and has retained counsel experienced in class action litigation and ERISA litigation.

66.     Certification of the Class in this action is appropriate under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure because the prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

67.     Certification of the Class in this action is also appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

68.     In the alternative, certification of the Class in this action is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because the questions of law or fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

69.     Plaintiff Foss incorporates the allegations of paragraphs 1 through 68 inclusive as if fully set forth herein at length. This Count is asserted against Lucent, the Committee, and the Individual Defendants under Section 404 of ERISA, 29 U.S.C. § 1104.

70.     Lucent, the Committee, and the Individual Defendants are all fiduciaries with respect to the Lucent Retirement Income Plan.

71.     Plaintiff Foss is a Transferred Individual under the Employee Benefits Agreement, and the Class consists of Transferred Individuals under the Employee Benefits Agreement and their mandatory beneficiaries.

72.     The Employee Benefits Agreement entered into by Lucent and AT&T is a document or instrument governing the Lucent Retirement Income Plan within the meaning of Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D).

73.     The Employee Benefit Agreement required Lucent "to pay, perform, fulfill, and discharge" all of the liabilities owed to Transferred Individuals under the AT&T Management Pension Plan, including, but not limited to, the death benefit.

74.     By purporting to amend the Lucent Retirement Income Plan to eliminate death benefits for members of the Class, Lucent, the Committee and the Individual Defendants caused Lucent to violate the Employee Benefit Agreement.

75.     Accordingly, Lucent, the Committee and the Individual Defendants have violated their fiduciary duty to operate the Lucent Retirement Income Plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

76.     Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff Foss is entitled to enjoin Lucent, the Committee and the Individual Defendants from enforcing the Plan Amendment as it violates Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), or to obtain

other appropriate equitable relief to address such violations and to enforce Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D).

77.     Pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Lucent, the Committee and the Individual Defendants are personally liable to make good to the Lucent Retirement Income Plan any losses to the plan that may result from their breach of fiduciary duty and to restore to such plan any profit which they have made through use of assets of the plan by them, and are subject to such other equitable or remedial relief as the Court may deem appropriate.

78.     Pursuant to Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), Plaintiff Foss is entitled to bring this action for appropriate relief under Section 409 of ERISA, 29 U.S.C. § 1109.

COUNT II

79.     Plaintiff Foss incorporates the allegations of paragraphs 1 through 78 inclusive as if fully set forth herein at length.  This Count is asserted against Lucent and the Lucent Retirement Income Plan under Section 204(g) of ERISA, 29 U.S.C. § 1054(g).

80.     The death benefit that was historically provided under both the AT&T Management Pension Plan and, until recently, under the Lucent Management Pension Plan was always intended to be an accrued benefit in which retirees had a non-forfeitable interest that could not be eliminated by amendment of the plan.

81.     The death benefit was always paid out of plan assets, not through life insurance, and the funding policy for both the AT&T Management Pension Plan and the Lucent Management Pension Plan included the death benefit as an element of the plan sponsor's pension liabilities that were subject to its funding obligations.

82.     Both the AT&T Management Pension Plan and the Lucent Management Pension Plan treated the death benefit as an obligation which was non-forfeitable and could not be

21

eliminated by the specific provision for the payment of death benefits out of plan assets upon termination of the plan.

83.     The effect of the death benefit under the AT&T Management Plan and the Lucent Management Pension Plan was to provide each qualified participant with a benefit in excess of the actuarial value of his or her normal pension commencing at age 65. Accordingly, the death benefits were a retirement-type subsidy which were contingent on the occurrence of an event the date of which was unpredictable.

84.     For members of the Class, the death benefit represented an accrued benefit protected under Section 204(g) of ERISA.

85.     By amending the Lucent Retirement Income Plan to eliminate the death benefit, Lucent violated Section 204(g) of ERISA, 29 U.S.C. § 1054(g).

<u>COUNT III</u>

86.     Plaintiff Foss incorporates the allegations of paragraphs 1 through 85 inclusive as if fully set forth herein at length. This Count is asserted against Lucent under federal common law.

87.     Plaintiff Foss is a Transferred Individual under the Employee Benefits Agreement and the Class consists of Transferred Individuals under the Employee Benefits Agreement and their mandatory beneficiaries.

88.     The Employee Benefit Agreement obligated Lucent "to pay, perform, fulfill and discharge," all liabilities owed to Transferred Individuals under the AT&T Management Pension Plan, including, but not limited to, the death benefit.

89.     Lucent received assets, to be held in trust for the benefit of Plaintiff Foss and the members of the Class, to fund the liabilities owed to them under the AT&T Management Pension Plan, including, but not limited to, the death benefit. Having amended the Lucent Retirement Income Plan to eliminate the death benefit payable to Plaintiff Foss and the members of the Class,

22

Lucent has effectively converted assets transferred to it in trust to its own benefit as it has acknowledged that it has eliminated the death benefit in order to avoid incurring funding obligations for the Lucent Retirement Income Plan.

90.     By purporting to amend the Lucent Retirement Income Plan to eliminate death benefits for members of the Class, Lucent has violated the Employee Benefits Agreement.

91.     Lucent's obligations to Plaintiff Foss and the members of the Class under the Employee Benefits Agreement are enforceable pursuant to federal common law.

92.     Plaintiff Foss and the members of the Class lack an adequate remedy at law in that the trustees of the Lucent Retirement Income Plan currently lack authority to pay any death benefits out of plan assets, and Lucent has indicated that it plans to calculate its funding obligations without reference to the death benefit, which creates a risk that the Lucent Retirement Income Plan will lack sufficient funds to pay death benefits when they become due.

## COUNT IV

93.     Plaintiff Foss incorporates the allegations of paragraphs 1 through 92 inclusive as if fully set forth herein as length.  This Count is asserted against Lucent, the Committee and the Individual Defendants under Section 404 of ERISA, 29 U.S.C. § 1104.

94.     Lucent, the Committee and the Individual Defendants are all fiduciaries with respect to the Lucent Retirement Income Plan.

95.     Defendants disseminated a written communication to the members of the Class stating that Lucent could properly eliminate the death benefit when in fact elimination of the death benefit was a breach of fiduciary duty under Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), a violation of Section 204(g) of ERISA, 29 U.S.C. § 1054(g), and a violation of federal common law.

96.     By reason of the foregoing communication, members of the Class have been materially misled with respect to their rights under the Lucent Retirement Income Plan, in violation of Defendants' fiduciary duties pursuant to Section 404(a) of ERISA, 29 U.S.C. § 1104(a).

97.     Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff Foss seeks equitable relief for the foregoing breach of fiduciary duty.  Specifically, Plaintiff Foss seeks the issuance of an order, upon the entry of final judgment in this action, directing Defendants to disseminate to all Class members in a form and manner satisfactory to the Court a corrective disclosure informing of them of their right to seek death benefits to be paid from the assets of the Lucent Retirement Income Plan and directing that any death benefit attributable to the death of any former AT&T Management Pension Plan Participant between February 1, 2003 and the entry of final judgment may be filed within one-year of the entry of final judgment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Foss respectfully requests that the Court enter judgment as follows:

a.     Declaring this action to be an appropriate class action under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff Foss as a representative of the Class and appointing his counsel as counsel for the Class;

b.     Declaring that the Plan Amendment violated the Employee Benefits Agreement;

c.     Declaring that defendants breached their fiduciary duties under Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1132(a)(1)(D);

d.     Declaring that the death benefit provided under the AT&T Management Pension Plan and Lucent Management Pension Plan is an accrued benefit protected from cut-back under Section 204(g) of ERISA;

24

e.    Declaring that the Plan Amendment violated Section 204(g) of ERISA;

f.    Declaring that the Plan Amendment violated federal common law;

g.    Directing Lucent to pay the death benefit to the mandatory beneficiary or beneficiaries with respect to any retiree's deaths since February 1, 2003;

h.    Directing Lucent to pay the future death benefits of all other Class Members;

i.    Imposing a constructive trust upon plan assets of the Lucent Retirement Income Plan in an amount sufficient to fund the death benefit;

j.    Appointing an independent fiduciary to administer the death benefit;

k.    Directing Lucent to include its liability for the death benefit in calculating its plan contribution obligations;

l.    Ordering Lucent, the Committee and the Individual Defendants to make good any losses suffered by the Lucent Retirement Income Plan resulting from their breaches of their fiduciary duties;

m.    Ordering Lucent, the Committee and the Individual Defendants to disgorge any profits which they have received by reason of their breaches of their fiduciary duties;

n.    Directing Defendants to issue a corrective disclosure to the members of the Class;

o.    Awarding Plaintiff reasonable attorneys' fees and expenses (including expert fees) of this action; and

p.    Granting such other and further relief as the Court deems just and proper.

25

Dated: October 21, 2003                    PELLETTIERI, RABSTEIN & ALTMAN

                                    By:
                                           _____
                                           Arthur Penn (AP 2952)
                                           100 Nassau Park Boulevard
                                           Suite 111
                                           Princeton, New Jersey 08540
                                           (609) 520-0900

                                           LOCAL COUNSEL FOR PLAINTIFF
                                             FOSS AND THE PROPOSED CLASS


                                           CHIMICLES & TIKELLIS LLP


                                    By:
                                           _____
                                           James R. Malone, Jr. (JM 2058)
                                           Ramona M. Mariani (RM 8543)
                                           (A Member of the Bar of this Court)
                                           361 West Lancaster Avenue
                                           One Haverford Centre
                                           Haverford, PA 19041
                                           (610) 642-8500

                                           COUNSEL FOR PLAINTIFF FOSS
                                             AND THE PROPOSED CLASS



**Lucent Technologies**
Bell Labs Innovations



January 2, 2003

Dear Lucent Retiree:

The last two years have been the most challenging period in the history of our industry. The length and depth of the downturn in customer spending has been without precedent, and we believe that in 2003 we will continue to see a decline in revenues.

As a result, Lucent has been working to identify and act on all opportunities to reduce our costs wherever possible in order to remain competitive and return to profitability. One of those actions is reviewing the affordability of the benefits we provide to active and retired employees.

We currently offer U.S.-based management employees who retired before January 1, 1998, <u>both</u> life insurance coverage[1] and a death benefit.[2]  Historically, the company introduced the death benefit before any group life insurance coverage was generally available. Providing a death benefit today is unusual among our competitors, and most companies have long ago eliminated death benefits from their retiree benefit plans. In fact, in 1997, Lucent amended its pension plan to eliminate the death benefit for management employees who retired on or after January 1, 1998.

Lucent is now a smaller company. To balance our ability to provide affordable benefits and remain competitive in our industry, we have made the difficult decision to eliminate the death benefit for all U.S. management retirees, regardless of retirement date. This change is effective February 1, 2003. However, we continue to provide the group life insurance benefit with a coverage amount that's significantly higher than the average of our competitors' offers.

The decision to eliminate the death benefit is part of our continuing efforts to ensure the long-term viability of our business. Every action we've taken throughout these tough times has been to ensure our financial strength as we weather this storm and position Lucent for growth when the market returns.

**No Impact on Your Other Benefits**

While the death benefit is paid from the assets of our pension plan, this change does <u>not</u> affect the management pension plan's ability to pay your monthly pension benefit. Retirement benefits, including life insurance, retiree healthcare benefits, and the pension survivor annuity payouts for those who elected that option, are not affected by this decision. Those benefits are separate and apart from the death benefit.

**For More Information**

      This change requires no action on your part.  However, if you have questions regarding your pension, you may call the Pension Service Center at 1-888-736-7700.  Questions about your retiree health insurance coverage should be directed to the Lucent Benefits Center at 1-888-232-4111, and questions about your retiree life insurance coverage should be directed to MetLife at 1-888-201-4612.  **We recommend that this letter be filed with your other pension and financial documents.**

      Please do not hesitate to contact our Pension Service Center at the number listed above if you have any questions.

Sincerely,

*Pamela O. Kimmet*

Pamela O. Kimmet
Senior Vice President
Lucent Human Resources

---

[1.]   The Company-paid basic life insurance coverage is equal to one year's total annual pay at retirement until age 65, reduced thereafter (beginning the first of the month following the retiree's 66th birthday) by 10 percent a year until age 70, and is payable to the retiree's designated beneficiary(ies) or estate. Life insurance coverage can be tailored to suit retirees' individual needs as it enables them to name beneficiaries.

[2.]   The current death benefit provisions of the management pension plan provide a death benefit equal to twelve months pay at retirement, but the benefit is payable only to a retiree's qualified mandatory beneficiary or beneficiaries.  Mandatory beneficiaries are the retiree's lawful spouse at the time of death, unmarried children under the age of 23 (or over the age of 23 if incapable of self-support), and dependent parents.  If there is no qualified mandatory beneficiary, no death benefit is payable.  Unlike Lucent's group life insurance program, the death benefit does not apply to every retiree, since it is only paid if the retiree is survived by a qualified mandatory beneficiary.

## Questions and Answers

**Q1. Why did the company eliminate the death benefit for management retirees?**

**A1.** The decision to eliminate the death benefit for all management retirees is part of Lucent's continuing efforts to ensure the long-term viability of our business.

Our qualified pension plans have historically been over funded. The value of the assets in the management pension plan, like all pension plans, is tied to the performance of the financial markets, particularly the equity markets and interest rates. Although the management pension plan remains funded in accordance with legal requirements, the value of the management pension plan assets has decreased due to the recent performance of the equity markets, while at the same time the size of the plan's liabilities has increased because of falling interest rates. If the funding level of the pension plan were to fall below certain levels, the company could be required to make cash contributions from company operating funds to bring the plan back up to the required funding levels.

The death benefit, which is an ancillary benefit provided at the company's discretion, is considered a liability of the pension plan and, therefore, reduces the assets available to pay other pension benefits—benefits that we are required to pay by law.

By eliminating the death benefit, we will conserve approximately $35 million in pension assets annually, for a number of years, and reduce the present value of our management pension plan's funding obligation by about $400 million. Most important, the elimination of the death benefit reduces the likelihood that we would have to make a contribution to the plan in the near future.

**Q2. How can the company amend the Lucent Retirement Income Plan (LRIP) to eliminate the death benefit for individuals who are already retired?**

**A2.** Although the death benefit is paid from the assets of the pension trust, it is a distinct benefit, separate and apart from your accrued monthly pension benefit computed under the formula defined in the LRIP.

Federal law (Section 411(d)(6) of the Internal Revenue Code of 1986, as amended, and Section 204(g) of the Employee Retirement Income Security Act of 1974 ("ERISA")) prohibits the company from reducing your accrued monthly pension benefit computed under the management pension formula in effect at the time you retired. The death benefit is not part of your accrued monthly pension benefit, but is an ancillary benefit provided at the discretion of the company. As such, the death benefit provisions of the LRIP are not governed by the same legal restrictions that apply to your service pension.

- 2 -

**Q3.** I retired from AT&T and was later assigned to Lucent. Since the death benefit was part of the AT&T plan, how can Lucent eliminate the death benefit?

**A3.** The responsibility for certain retirees was assigned to Lucent by AT&T at the time AT&T spun off Lucent as an independent company. As communicated at the time of the spin-off of Lucent from AT&T, while the pension and other benefit plans established by Lucent at the time of spin-off were equivalent to the then current AT&T plans, it was expected that over time the companies' plans would diverge to reflect the marketplace and workplace environments in which each company operates.

**Q4.** When Lucent becomes profitable again, will it reinstate the death benefit?

**A4.** There are no plans to reinstate the death benefit once Lucent returns to profitability. Providing a death benefit today is unusual, and most companies have long ago eliminated death benefits from their pension plans. Lucent continues to provide a group life insurance benefit with a coverage amount that's significantly higher than the average of our competitors' offers.

**Q5.** Does the elimination of the death benefit affect my monthly pension benefit?

**A5.** No. This change does not affect your accrued monthly pension benefit, which is protected under the provisions of ERISA and the Internal Revenue Code and is separate and apart from the death benefit. In fact, elimination of the death benefit will conserve approximately $35 million in pension assets annually, thereby increasing the plan's ability to pay the monthly pension benefit without requiring a contribution from Lucent's operating cash.

**Q6.** Is my monthly pension benefit guaranteed?

**A6.** As previously stated, Lucent's qualified pension plans (management and occupational) are funded through a separate pension trust and the accrued monthly pension benefits payable from the pension trust are protected.

ERISA and the Internal Revenue Code of 1986 have protected benefit rules that prohibit the company (or any successor of the company) from reducing accrued monthly pension benefits. This protection also extends to monthly survivor annuity benefits payable under a joint and survivor option.

In addition to Lucent's obligation to sufficiently fund the pension plans to pay accrued monthly pension benefits, ERISA provides that the Pension Benefit Guaranty Corporation, a federal government entity, will provide certain pension benefits up to statutory limits in the unlikely event the trust is not able to do so.

- 3 -

**Q7.   Are my pension benefits paid from company operating expenses guaranteed?**

**A7.**   Retirees who were highly compensated, or who, in some cases, retired early, may have a portion of their pension paid from company operating expense due to limits set by the Internal Revenue Code. Retired employees whose pensions are affected by these limits receive a portion of their pension payments out of Lucent's operating income. Benefits paid from Lucent's operating income would not be protected in the unlikely event Lucent is unable to pay them.

In the event of a corporate merger or change in control, the company would be obligated to fund trusts from which such supplemental pension benefits would be paid.

**Q8.   Are my retiree healthcare benefits protected?**

**A8.**   No. An important distinction should be made between the accrued monthly pension benefit under Lucent's pension plans and Lucent's other retirement plans, particularly its retiree healthcare plans. Under federal law, obligations relating to retiree healthcare benefits are not generally paid from the pension trust, but from separate trusts or operating cash. Lucent will continue to evaluate, and may adjust benefits provided to active and retired employees in light of current business conditions, costs, and applicable law.

**Q9.   Is Lucent making other changes to its retiree benefit plans?**

**A9.**   While we can't speculate about possible future changes to benefits, Lucent continually evaluates its benefit programs for both active and retired management employees, taking into account the need to balance our ability to provide affordable benefits and remain competitive in our industry.

**Q10.   Why did Lucent transfer assets from the pension plan to help pay for retiree healthcare costs and then eliminate the death benefit?**

**A10.**   Federal law allows employers to transfer certain excess pension assets from a defined benefit pension plan into a special retiree health benefits account established within the pension plan for purposes of paying retiree health benefits.

Lucent used this provision of the law to transfer a portion of the excess assets held in the management pension plan to help pay for management retiree healthcare benefits for fiscal years 1999 to 2002. (The transferred amounts may only be used to pay for management retiree healthcare benefits for the associated fiscal year.) The transfers of excess pension assets enabled the company to bear a greater share of the cost of retiree healthcare coverage in the years of the transfers and reduce the amount of retirees' contributions toward those costs. Following each asset transfer, the management pension plan still had more than enough assets to cover all of the pension liabilities of the Plan.

- 4 -

Lucent's qualified pension plans have historically been over funded. However, the funding level in the management pension plan have been impacted by the decline in the equity markets and falling interest rates over the past two years, far more than by the transfers to pay management retiree healthcare costs. While the management pension plan remains funded in accordance with legal requirements, the value of the assets in our management pension plan has decreased.

**Q11. At the time I retired, I declined survivor annuity coverage. Will I be given an opportunity to change my survivor annuity election?**

**A11.** No. Under the terms of the LRIP, a participant's monthly pension benefit is reduced to pay for the cost of survivor annuity coverage over the participant's lifetime. To allow participants receiving a single life annuity to change to a joint and 50 percent survivor annuity would be cost prohibitive to the plan.

**Q12. Does the company have plans to offer additional life insurance coverage to replace the death benefit?**

**A12.** No. The death benefit was an ancillary benefit paid from the pension plan. Since it was not life insurance, no conversion to an individual life insurance policy is available. Additional life insurance beyond that already provided by the company would be cost prohibitive.

**Q13. How can I check on or change my group life insurance beneficiary designation?**

**A13.** You should contact MetLife at 1-888-201-4612.

**Q14. Is the death benefit being eliminated for formerly represented retirees covered by the Lucent Technologies Inc. Pension Plan (LTPP)?**

**A14.** No. The death benefit under the LTPP is subject to the existing collective bargaining agreements.

Exhibit B

# AMENDMENT TO THE LUCENT RETIREMENT INCOME PLAN

The Lucent Retirement Income Plan (the "Plan") is hereby amended as follows effective February 1, 2003:

1. Article V of the Plan, as amended and restated as of January 1, 1998, entitled "Death Benefits", is hereby deleted in its entirety with respect to retirees who die on or February 1, 2003.

2. Any provision of any predecessor or prior version of the Plan that may have provided or authorized the payment of a death benefit upon the death of a retiree who retired before January 1, 1998 is hereby deleted in its entirety with respect to retirees who die on or after February 1, 2003.

3. Section 3.1 of the Plan, as amended and restated as of January 1, 2000, ("Role of the Company") is hereby amended by changing the second sentence thereof to read as follows:

"The Company shall appoint (a) an Employee Benefits Committee having the administrative responsibilities described below, and (b) one or more trustees which, except as otherwise provided herein, shall be responsible for holding and managing assets of the Plan and paying pensions payable therefrom."

4. Section 4.6 of the Plan, as amended and restated as of January 1, 2000, ("Pension Funding Policy and Method") is hereby amended by changing the first sentence of the first paragraph thereof to read as follows:

"The Company has established a trust separate from the assets of the Company or any other Participating Company which, together with the allocable interest held by the Plan or such trust in the Telephone Real Estate Equity Trust, is hereinafter referred to as the "Pension Fund" for payment of service pensions, deferred vested pensions and related survivor annuities (defined in Appendices A1.1(a), A1.1(b) and A1.3, respectively) and payments to Participants under the ABP in accordance with Appendix B."

5.      Section 4.6 of the Plan, as amended and restated as of January 1, 2000,

        ("Pension Funding Policy and Method") is hereby amended by changing

        the first sentence of the second paragraph thereof to read as follows:

        "The Company and the other Participating Companies undertake to maintain the Pension Fund so long as the said Plan shall continue, by periodic charges to operating expenses and payments to the Pension Fund which meet the requirements of the law and which are in such amounts that there will be available in the Pension Fund amounts sufficient to provide for the service pensions, deferred vested pensions, and payments to annuitants in accordance with Appendix A1.3, and payments to participants under the ABP in accordance with Appendix B, in the amounts stated in the Plan."

6.      Section 4.6 of the Plan, as amended and restated as of January 1, 2000,

        ("Pension Funding Policy and Method") is hereby amended by changing

        the first and second sentence of the third paragraph thereof to read as

        follows:

        "The Pension Fund shall be held by a trustee or trustees or an insurance company or companies as permitted by law for pension purposes only and shall be disbursed as directed by the Company or any other Participating Company, as applicable, from time to time. The Company undertakes to preserve the integrity of the Pension Fund as a fund held in trust or by an insurance company or companies as permitted by law to be applied solely to pension purposes and to take such action as may be necessary or appropriate to insure the application of the entire fund, to such purposes."

7.      Section 4.9 of the Plan, as amended and restated as of January 1, 2000,

        ("Pension Plan Termination Arrangements") is hereby amended by

        deleting the subparagraph entitled "Second", relating to making provision

        for the payment of death benefits, and renumbering the succeeding

        subparagraphs "Third" and "Fourth", respectively, to "Second" and

        "Third".

8.     Section 9.2 of the Plan, as amended and restated as of January 1, 2000,

("Changes in Plan") is hereby amended by changing the fifth sentence of

the second paragraph thereof to read as follows:

"In general, a retirement-type subsidy is a subsidy that continues after retirement, but does not include a qualified disability benefit, a medical benefit, a social security supplement, or a death benefit (including life insurance)."

Exhibit C

January 6, 2003

Ms Pamela O. Kimmet
Senior VP Human Resources
Lucent Technologies
P.O. Box 6864
Piscataway, NJ 08855

Dear Ms Kimmet:                    Regarding: Suspension of Death Benefit

Your letter dated January 2, 2003 was not welcome news as you have probably heard from many sources but I will give you credit for waiting until after the holidays before spreading the bad news – the old Bell System had a habit of spreading bad news just before Christmas.

I accept the fact that Lucent is going through "bad times" and has to tighten the purse strings and after all, life is not fair. It is a maxim however that life is fairer for some than for others. You mention in your third paragraph, "In fact, in 1997, Lucent amended its pension plan to eliminate the death benefit for management employees who retired on or after January 1, 1998." The significance of that statement is that the employees contemplating retirement had the prior knowledge of the discontinuance of the death benefit occurring in the following year – I didn't, I'm an old school Bell System employee who planned his future based upon the integrity of the system that seems to be losing its integrity.

My wife and I chose not to take survivor's benefits and the death benefit was factored into our decision. Now that we are left without the death benefit we do not have the luxury of deciding whether to accept survivor's benefits or not. That's why I say to you, life is fairer for some than for others – my wife is left out in the cold and I have no recourse.

Page 2

It is unlikely that Lucent will offer some sort of remediation of this lousy situation but just in case your "committees" forgot to include "we no survivor's benefits people," perhaps Lucent could provide some way for us to change directions so that our survivors aren't relegated to poverty upon our demise – at least provide us with the opportunity to select survivor's benefits just as you permit retiring employees today to select that option knowing a dependent spouse will not receive death benefits.

The next time you see Bob Holder, please tell him for me that I'm unhappy and that my $13,500,000 SAC sale in 1983 ought to be worth something – that was a big sale in those days - I kept my end of the bargain, Lucent isn't.


Sincerely,


Edward Foss
25 East Cheyenne Mountain Blvd.
Colorado Springs, CO 80906

719-527-1874

edfoss@adelphia.net

Exhibit D



**Lucent Technologies**
Bell Labs Innovations

600 Mountain Avenue
Murray Hill, NJ 07974

May 19, 2003

Mr. Edward Foss
25 East Cheyenne Mountain Blvd.
Colorado Springs, CO 80906

Dear Mr. Foss:

Pat Russo and I have received letters from retirees like you expressing your concerns about the company's decision to eliminate the death benefit for management retirees. I want to take this opportunity to further explain why we regretfully concluded this action was necessary and to apologize for the delay in responding to your letter. Unfortunately, your letter was misdirected and just arrived at my office.

I want you to know that this was one of the most difficult of many difficult decisions the company has had to make as we strive to remain competitive and return to profitability in the face of an unprecedented market downturn. I want to emphasize that we struggled with this decision and made it only after long and careful deliberation.

Lucent is a much smaller company than we were several years ago. Our customers have reduced their spending dramatically and we've had to reduce our cost structure to match market realities. We've gone from being a $38 billion company at our peak in fiscal 1999 to a $12.2 billion company at the end of fiscal 2002, and we've had to make many changes to bring company expenses in line with what we can afford. In many instances, we've had to make some very tough decisions, including telling thousands of talented and capable employees that we no longer had work for them.

Employees who remained with us have had their benefits reduced or eliminated. For example, in June 2001 we told active employees hired after June 1986 that they will not receive any company subsidy toward their retiree healthcare or life insurance coverage, and we capped the company subsidy for other active employees depending on their years of service. In addition, we've made cutbacks in other areas, such as eliminating retirement and service anniversary gifts for management employees.

Historically, our management pension plan has been so over funded that contributions were not necessary, nor were they even permitted. However, the recent decline in the equity market has reduced the value of the assets in our management pension plan, and the recent decline in interest rates has increased our pension liabilities. While our

- 2 -

management pension plan remains funded in accordance with legal requirements, the funding level has decreased. If the funding level were to fall below certain levels, Lucent could be required to make a cash contribution from operating funds to bring the plan back up to the required funding levels.

This is not a problem that is unique to Lucent. Many U.S. companies have announced that they have been required to make significant contributions to their pension plans to make up for the funding shortfall caused by these declines.

By eliminating the death benefit, we were able to reduce the present value of our management pension plan's funding obligation by about $400 million. Most important, it reduces the likelihood that we would have to make a contribution to the plan in the near future. At a time when customer spending is at the lowest it has been in the history of the industry, conserving our cash is key to ensuring our strength and positioning Lucent for growth when the market returns.

I hope that the additional information provided in this letter, as well as in the enclosed questions and answers, will help you to understand our reasons for eliminating the death benefit and that this action was necessary to help preserve the long-term viability of the company.

Sincerely,

Pamela O. Kimmet
Senior Vice President
Lucent Human Resources

Enclosure