NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EDWARD FOSS, on behalf of himself and all others similarly situated, SARAH CONDER, VINCENT R. LUCAS, Individually and on behalf of all others similarly situated, ARTHUR BERENDT, and ROBERT B. HOWARD | : : : : : : : | **Hon. Dennis M. Cavanaugh**  **OPINION**  Civil Action No. 03-CV-5017(DMC) |
| Plaintiffs, | : : : | |
| v. | : : | |
| LUCENT TECHNOLOGIES INC.; LUCENT RETIREMENT INCOME PLAN; and LUCENT TECHNOLOGIES, INC. EMPLOYEE BENEFITS COMMITTEE, | : : : : : : | |
| Defendants. | : : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Lucent Technologies, Inc.,

Lucent Retirement Income Plan, Lucent Technologies Inc. Employee Benefits Committee, and

AT&T Corporation pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for

Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, directed to the

Consolidated Amended  Complaint ("Complaint"), filed on or about November 10, 2005.  Oral

argument was heard on this matter on November 9, 2006.   After carefully considering the

submissions of the parties, and based upon the following, it is the finding of this Court that

Defendants' motion to dismiss or for summary judgment is granted.

I.    BACKGROUND

In 1996, AT&T created a spin-off, Lucent Technologies.  As part of the creation of the spin-

off, several AT&T retirees were transferred to the Lucent retirement plan.  This class action consists of a class of AT&T retirees and their beneficiaries who, prior to February 2003, were eligible to receive a death benefit under the Lucent Retirement Income Plan if certain subsequent conditions were met.  Plaintiffs were AT&T retirees who commenced retirement before the Lucent spin-off.  Specifically, they are members of a class of former AT&T plan participants who were transferred to the Lucent plan with the spin-off.  Plaintiffs seek relief pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1465, claiming "a right to have a death benefit paid to their spouse or other dependents in an amount equal to one year's salary."  Complaint ¶1.  The disputed Pensioner Death Benefit ("death benefit") was one of many benefits included in the Lucent Retirement Income Plan, successor in interest to the AT&T Management Pension Plan.  Lucent's elimination of the death benefit from the defined benefit plan and subsequent refusal to pay Plaintiffs the death benefit gave rise to this litigation.

###### A.  The AT&T Plan

AT&T maintained a defined pension plan, known as the AT&T Management Pension Plan (the "AT&T Plan").  Complaint ¶15.  The AT&T Plan, like the subsequently created Lucent Plan is a defined benefit plan.  Stated generally, a defined benefit plan typically "consists of a general pool of assets rather than individual dedicated accounts.  Such a plan, 'as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439 (1999) (citing Comm'r v. Keystone Consol. Indus., Inc., 508 U.S. 152, 154 (1993)).  Among other benefits, the AT&T Plan provided for a death benefit to be paid to a retired plan participant's spouse or other dependent relatives upon the plan participant's death.

### B.     **The Lucent Plan**

When Lucent was created it assumed AT&T's responsibilities under the AT&T Plan.  To memorialize this transfer of obligations and liabilities, AT&T and Lucent entered into an Employee Benefits Agreement ("EBA").  Under the EBA, Lucent assumed and agreed to pay AT&T's benefit obligations to certain former employees.  Assets were transferred from the AT&T Management Pension Plan on the condition that Lucent would assume the responsibility of such payments to certain AT&T retirees.  Complaint ¶38.  Thereafter Lucent established a defined benefit pension plan, the Lucent Technologies Inc. Management Plan (the "Lucent Plan"), that mirrored the provisions of the AT&T Plan.  Like the AT&T Plan, the Lucent Plan also included a death benefit. The death benefit was payable to a retiree's qualified mandatory beneficiary or beneficiaries in an amount equal to twelve months pay at retirement.  Complaint ¶41.  Beneficiaries eligible to receive the benefit at the plan participant's death included the participant's spouse at the time of death, dependent children up to age 23 (and older children in specified circumstances) or dependent parents living with or near the retiree.  AT&T Plan, Art. 5; Lucent Plan, Art 5.

### C.     **Administration of the Plan**

Lucent Technologies Inc. Employee Benefits Committee ("the Committee") is among the named Defendants in this case.  The Committee acts as the plan administrator and is thereby vested with discretionary authority to administer the plan and make changes to it.  AT&T Plan Sec. 3.1, 3.2(e)(ii), and 3.3; Lucent Plan, Sec 3.1, 3.2(e)(ii), and 3.3.  Both the AT&T Plan and the successor Lucent Plan contained "reservation of rights" clauses.  AT&T Plan, Sec. 10.1; Lucent Plan, Sec. 10.1.  These  provisions authorized the Committee to make changes in the benefit offerings or to terminate the plan entirely, provided the action did not affect an Employee's right to vested benefits.

### D.   **Elimination of the Death Benefit**

As of January 1, 2000, the death benefit under the Lucent Plan was maintained only for plan participants who retired prior to January 1, 1998.  Later, on or about January 2, 2003, Lucent sent letters to all retirees informing them that it was eliminating the death benefit for management employees who retired on or after January 1, 1998.  Complaint ¶ 53.

### E.   **Plaintiffs' Claim to the Death Benefit**

As stated above, the plaintiffs in this case were all AT&T retirees whose benefits were transferred under the Lucent Plan, with the exception of Plaintiff Conder.  Unlike the other Plaintiffs, Plaintiff Conder's late husband, Joseph Conder, was also alive as of February 1, 2003, but has since died.  All other plaintiffs were also alive on February 1, 2003 when the death benefit was eliminated.  Under the amended Lucent Plan neither Plaintiff Conder's heirs nor the other Plaintiffs' future heirs are eligible to receive the death benefit.

## II.   DISCUSSION

### A.   **Plaintiffs' Claims**

Plaintiffs claim a right to receive the death benefit and/or damages and equitable relief under the following three theories: (1) breach of fiduciary duty; (2) violation of ERISA's anti-cutback rule; and (3) breach of unilateral contract pursuant to federal common law.  In Count I of the Complaint, Plaintiffs seek money damages on the grounds that the Committee's elimination of the death benefit was in violation of the fiduciary duties it owes under ERISA.  In Count II, Plaintiffs contend that the death benefit was protected by ERISA's anti-cutback rule as either a pension benefit or, alternatively, a welfare benefit.  In Count III, Plaintiffs claim that pursuant to federal common law, elimination of

the death benefit constituted a breach of unilateral contract.  Specifically, in Count III, Plaintiffs argue that the pension plan constituted a contract, accepted by Plaintiffs through performance and that the death benefits vested upon Plaintiffs' performance.  Lastly, in Count IV, Plaintiffs seek equitable relief based on Defendants' alleged breach of fiduciary duty.

**B.**    **12(b)(6) Dismissal**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations in the complaint must be taken as true and must be viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

**C.**    **Rule 56 Summary Judgment**

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there

is no genuine issue of fact and it must prevail as a matter of law, or that the non-moving party has

not shown facts relating to an essential element of the issue for which he bears the burden.  Celotex,

477 U.S. at 331.  If either showing is made then the burden shifts to the non-moving party, who must

demonstrate facts which support each element for which he bears the burden and must establish the

existence of genuine issues of material fact.  Id.  The non-moving party "may not rest upon the mere

allegations or denials of his pleading" to satisfy this burden, Fed. R. Civ. P. 56(e), but must produce

sufficient evidence to support a jury verdict in his favor.  Matsushita Electric Industrial Co. v. Zenith

Radio Corp., 475 U.S. 574 (1986).

## III.   ANALYSIS

        Defendants' motion to dismiss or for summary judgment raises the following five issues.

First, the Court must determine whether the Plan terms are ambiguous.  If the terms are ambiguous

then the Court may look to extrinsic evidence to ascertain the meaning of the Plan's terms.  Second,

the Court must determine whether the challenged actions are subject to ERISA's fiduciary

provisions.  Third, whether the benefit is properly classified as a pension benefit, or alternatively,

as an employee welfare benefit.  Fourth, whether the death benefit was vested and thereby could not

be eliminated pursuant to ERISA's anti-cutback provision.  Finally, whether this Court may grant

relief based on federal common law in light of the Supreme Court's holding in Hughes Aircraft, 525

U.S. 432.

### A.    Ambiguity of Plan Terms

        The extent to which this Court may consider extrinsic evidence hinges on whether or not this

Court determines that the Lucent Plan's terms are ambiguous.  The question of whether an ERISA

6

plan's terms are ambiguous is one of law.  Bill Gray Ent., Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001).  Furthermore, a plan term is "ambiguous if it is subject to reasonable alternative interpretations.  Taylor v. Cont'l Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991).  Only if the plan terms are ambiguous is it appropriate for the court to "consider such [extrinsic] evidence when no ambiguity exists."  Bill Gray, 248 F.3d at 218, (quoting Epright v. Envtl. Res. Mgmt. Inc. Health & Welfare Plan, 81 F.3d 335, 339 (3d Cir. 1996)).

Defendants argue that the relevant Plan terms are not ambiguous.  On this basis, Defendants contend that the Court should not consider any extrinsic evidence in interpreting the Plan terms. Plaintiffs counter that provisions in the Plan documents are ambiguous and cite to various extrinsic evidence, including non-Plan documents as well as the subjective expectations and actions of individual Plaintiffs.  Specifically, Plaintiffs refer to the fact that "[p]articipants perceived Pension Death Benefits as pension benefits, and their availability influenced the decisions participants made about the form in which they should receive their service pension."

From a review of the Plan's terms, this Court finds that the Plan Documents are not ambiguous.  The same definition of the death benefit is included in the AT&T and Lucent Plans. The Plan language defining the death benefit and employees' eligibility clearly states who is eligible and when the death benefit was to be paid.[1]  Here, the language is not ambiguous because it is not "subject to reasonable alternative interpretations."  Taylor, 933 F.2d at 1232.  Thus, this Court must

_____

[1]    See Pl. Ex. 13 at D-001907; Pl Ex.14 at D-010406;  Pl. Ex.16 at D-010487; Pl. Ex.19 at D-002258.

"enforce the Plan as written unless [it] can find a provision of ERISA that contains a contrary directive."  Dade v. N. Am. Philips Corp., 68 F.3d 1558, 1561 (3d Cir. 1995).

**B.      Nonfiduciary Nature of Plan Administrator's Actions**

Plaintiffs challenge two of Defendants' decisions: (1) AT&T's decision to spin-off Lucent and transfer AT&T's pension obligations to Lucent; and (2) Lucent's decision to amend the Lucent Plan to eliminate the death benefit.  The classification of these decisions as fiduciary or nonfiduciary under ERISA is important because if they are nonfiduciary decisions then Defendants were within their proper discretion to make these decisions and Plaintiffs are not entitled to the equitable relief they seek for Defendants' alleged breach of fiduciary duties owed.  Defendants assert that these decisions are nonfiduciary decisions and as such cannot be challenged under ERISA.  Plaintiffs argue that Lucent and the Committee are and were fiduciaries of the Lucent Plan and that elimination of the death benefit constituted a breach of the fiduciary obligations owed by Defendants.  However, Plaintiffs' reasoning is flawed.  The fact that Defendants are fiduciaries does not compel the conclusion that they were acting in their fiduciary capacity when they amended the Plan.  While plan sponsors owe certain fiduciary duties under ERISA, they are also vested with the authority to take actions in a nonfiduciary capacity.

AT&T's decision to spin-off Lucent and transfer pension assets to Lucent was a nonfiduciary decision.  ERISA's fiduciary requirements do not apply to strictly business decisions that do not violate a specific ERISA provision or otherwise strip an individual of an already vested benefit. The Supreme Court noted that " 'only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration,' does a person

8

become a fiduciary under § 3(21)(A)."  Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (citing

Siskind v. Sperry Retirement Program, Unisys, 47 F.3d 498, 505 (1995)).  See also Blaw Knox Ret.

Income Plan v. White Consol. Ind, Inc., 998 F.2d 1185, 1189 (3d Cir. 1993) (holding that employer's

transfer of pension plans to a subsidiary was a "corporate business decision outside the scope of

ERISA's protective rules," to which "no fiduciary duties apply.")  Therefore, AT&T's decision to

spin-off Lucent and transfer its pension funds and obligations under the plan to Lucent was not a

plan management or administrative decision.  Rather, this decision was strictly a business decision

and not a decision made by AT&T in its fiduciary capacity.  So long as AT&T complied with ERISA

Section 208[2], AT&T did not breach any of its fiduciary obligations by spinning-off Lucent and

transferring pension assets to Lucent.  See 29 U.S.C.A. § 1058.

Lucent's decision to amend the plan is also a nonfiduciary decision.  The Supreme Court has

repeatedly held that "employers or other plan sponsors are generally free under ERISA, for any

reason at any time, to adopt, modify or terminate welfare plans."  Hughes Aircraft, 525 U.S. at 443,

(quoting Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995)).  Furthermore, when

employers undertake such action "they do not act as fiduciaries, but are analogous to the settlors of

a trust."  Hughes Aircraft, 525 U.S. at 443.  Thus, an employer may amend either a pension or

welfare benefit plan without being bound to a fiduciary standard of care.  See id.; see also Spink, 517

U.S. at 980.  Based on these holdings, the Third Circuit has concluded that "[w]hen an employer

---

[2]        Section 208 of ERISA requires that any merger or consolidation of a pension plan
provides each plan participant with a benefit equal or greater than the benefit he
would have received prior to the merger

makes decisions about the *design* of a welfare plan . . . it functions as an employer and not as an administrator and thus it is not acting as a fiduciary.  Accordingly, an employer can create a plan that furthers its business interests, and it can act according to these interests in amending or terminating the plan." Noorily v. Thomas & Betts Corp., 188 F.3d 153, 168 (3d Cir. 1999) (emphasis in original) (internal citations omitted); see also Lettrich v. J.C. Penney Co., Inc., 90 Fed. Appx. 604, 614 (3d Cir. 2004).  Here, Lucent's decision to eliminate the death benefit was a decision about the design of the plan, not plan administration.  The mere fact that Lucent amended its plan does not breach any fiduciary duties under ERISA; rather, only an amendment that violates a specific provision of ERISA triggers ERISA's fiduciary provisions.  See Bennett v. Conrail Matched Savings Plan Admin. Comm'ee, 168 F.3d 671, 679 (3d Cir. 1999).

Plaintiffs argue that Defendants, as plan sponsor, breached their fiduciary duties because they acted in violation of the plan itself in amending the plan to approve a reversion of assets to the employer.  In their brief Plaintiffs cite to Delgrosso v. Spang and Co., to support their argument that actions taken that contradict an express provision of the plan constitute a breach of fiduciary duties. 769 F.2d 928 (3d Cir. 1985).  This argument is unpersuasive because Delgrosso can be distinguished from this case in at least two major ways: (1) all contributions in that case were made under a defined contribution plan; and (2) unlike the reservation of rights clause contained in the plan in this case, the plan in Delgrosso contained a clause prohibiting reversion of contributions.  Id. at 930. Because Defendants' decisions to spin-off Lucent and amend the Lucent Plan were nonfiduciary decisions, Plaintiffs' claims for money damages and equitable relief based on breach of fiduciary duty is denied.

10

Taking the facts in the light most favorable to Plaintiffs, it is evident that dismissal as to Plaintiffs' Count I is appropriate because the facts alleged do not constitute a breach of any fiduciary duties owed by Defendants.

### C.    Classification of Death Benefit as a Pension Benefit or Welfare Benefit

This Court must decide whether the death benefit is properly classified as a pension benefit or an employee welfare benefit.  While ERISA offers protection to both pension benefits and employee welfare benefits, there are different provisions for modifying these benefits as well as different rules as to when such benefits vest.  Classification of the death benefit is critical to the disposition of Defendants' motions because the death benefit is protected by ERISA's anti-cutback rule only if (1) it is an accrued pension benefit; or (2) it is a vested employee welfare benefit.

ERISA's anti-cutback rule prohibits elimination or reduction of accrued benefits.  Notably, the rule, codified in ERISA Section 204(g), protects only *accrued* benefits.  29 U.S.C.A. § 1054.  Thus, if the AT&T/Lucent Plan death benefit was an accrued benefit then Lucent violated ERISA by eliminating it.

ERISA Section 3(23)(A) defines "accrued benefit" in the case of a defined benefit plan as an annual benefit, commencing at normal retirement age.  29 U.S.C.A. § 1002(23).  Pursuant to this definition, pension benefits and not employee welfare benefits may qualify as accrued benefits.  The respective statutory definitions of pension benefits and employee welfare benefits make clear that only pension benefits could potentially qualify as accrued benefits for purposes of the anti-cutback rule.

11

By definition, only pension benefits, not employee welfare benefits can be paid at normal retirement age in the form of an annual benefit; therefore, only pension benefits can be accrued. Stated generally, pension benefits are designed to provide retirement income to employees.  See Unisys Corp. Ret. Med. Benefit "ERISA" Litig., 58 F.3d 896, 901 (3d Cir. 1995) (citing 29 U.S.C. § 1002(1)).  Thus, pension benefits are often paid upon retirement and may be paid in the form of an annual benefit.  In contrast, employee welfare benefits are payments made in the event of "sickness, accident, disability, death or unemployment." 29 U.S.C.A. § 1002(1); see Unisys, 58 F.3d at 901 (explaining elements of an employee welfare plan).  By definition alone, it is evident that employee welfare benefits do not satisfy the requirements of an accrued benefit because welfare benefits are not paid at normal retirement age but rather when a specified event, such as death, occurs.

In this case, the death benefit, as defined by plan documents, satisfies the definition of an employee welfare benefit and is thus not an "accrued benefit" for purposes of the anti-cutback rule. The death benefit provided for payment to a plan participant's beneficiaries upon the plan participant's death and clearly is not paid at "normal retirement age."  Employee welfare benefits, are "maintained for the purpose of providing for [plan participants] or their beneficiaries . . . benefits in the event of death."  ERISA § 3(1), 29 U.S.C. § 1002(1).  Similarly, the death benefit provides for a plan participant's beneficiaries at the plan participant's death.  Finally, according to the Plan documents, the death benefit is paid in a lump sum or installment payments equal to twelve months salary.  The death benefit, according to the Plan documents, is not an annual benefit.  Because the death benefit was not paid annually or at normal retirement age it does not satisfy the statutory

definition of an accrued benefit and is not protected by the anti-cutback rule.

Plaintiff argues unpersuasively that the death benefit is a pension benefit because it was funded from surplus pension assets. This assertion is incorrect and not supported by any case law or statutory text. ERISA does not require that welfare benefits be funded by non-pension assets. Rather, some courts have held that employee welfare benefits are often part of a comprehensive pension plan. See Rombach v. Nestle USA, Inc., 211 F.3d 190, 193-93 (2d Cir. 2000) (citing McBarron v. S&T Indus., 771 F.2d 94, 97 (6th Cir. 1985)). The Court's role in classifying the death benefit is to look at the nature of the benefit as defined by the Plan terms. See Oatway v. Am. Int'l Group, 325 F.3d 184, 188-89 (3d Cir. 2003) (classifying benefits by what purpose they are designed to serve). This classification should not be made by evaluating how the plan is funded or how Plaintiffs subjectively perceived the benefit. Looking at the Plan documents and the purpose served by the death benefit, it is apparent that it is not protected by the anti-cutback rule.

Plaintiff also argues that the death benefit is protected by the anti-cutback rule because it is a retirement-type subsidy. In 1984 Congress enacted the Retirement Equity Act ("REA"), modifying ERISA Section 204(g) to include retirement-type subsidies within the definition of "accrued benefits." The legislative history of this change reveals that Congress was concerned with protecting the pension and retirement benefits of individuals who retired early. See Bellas v. CBS, Inc., 221 F.3d 517, 523, 525 (3d Cir. 2000). Additionally, the Senate Report addressing the reason for the change to ERISA Section 204(g) stated that certain benefits, including a death benefit, were not intended to be considered retirement-type subsidies. See S. Rep. No, 98-575, 98th Cong., 2d Sess., at 30 (1983) reprinted in 1984 U.S.C.C.A.N. 2547, 2574; see also Bellas, 221 F.3d at 526.

13

Furthermore, the death benefit does not satisfy the definition of retirement-type subsidy as provided by the Third Circuit.  Congress intended for retirement-type subsidy to be defined in Treasury Department regulations; however, no such regulations have been set forth.  See id. at 524; 29 U.S.C. § 1054(g)(2)(A).  Nevertheless, the Third Circuit has defined retirement-type subsidy as "the excess in value of a benefit over the actuarial equivalent of the normal retirement."  Bellas, 221 F.2d at 525; see also Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan, 854 F.2d 1516, 1521 n. 6 (3d Cir. 1998); Dade, 68 F.3d at 1562 n.1.  In Bellas, the Third Circuit explained how the retirement-type subsidy is calculated:

> [t]he value of the early retirement benefit is calculated by first determining the amount that would be payable to the participant at normal retirement age, given the participant's service and compensation as of the date of *early* retirement. This value then is reduced by a factor reflecting that benefit payments will begin earlier than was contemplated and, therefore, are likely to continue for a longer period of time.

221 F.2d at 525 (emphasis in the original) (internal citations omitted).  Adhering to the Third Circuit's definition of retirement-type subsidy, the death benefit is protected by the anti-cutback rule as a retirement-type subsidy only if it is calculated in this way.  In looking to the plain language of the Lucent Plan, it is evident that the death benefit is not a retirement-type subsidy because it is not calculated in the manner stated above; but rather, was a payment equivalent to the plan participant's final twelve months of compensation.  Pl. Ex. 2 at D000304.  In no way was the death benefit intended to provide a benefit to employees who retired early.  Instead, the death benefit primarily assisted a plan participant's beneficiary upon the retiree's death.

### D.     Vesting of Death Benefit

Having classified the death benefit as an employee welfare benefit, the next inquiry is whether this benefit had vested when Lucent eliminated it.  Once an employee welfare benefit vests it may not be eliminated without violating ERISA's anti-cutback rule.  See  Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 512 (1981); DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 420 F.3d 220, 223 (3d Cir. 2005).  Plaintiff contends that the benefit was vested when Lucent eliminated it.  Specifically, Plaintiff argues that this vesting occurred: (1) when plan participants became eligible for retirement with a service pension according to the language in the summary plan document (SPD); or, alternatively (2) when Lucent transferred excess pension assets to pay for post-retirement medical benefits.  As explained below, Plaintiffs' assertions about the time for vesting are incorrect because the vesting of employee welfare benefits must be clear on the face of the plan documents and here, the plan documents do not indicate that vesting occurred upon either of these events.

The Third Circuit has repeatedly noted that "ERISA does not require automatic vesting of welfare benefit plans."  Unisys, 58 F.3d at 901.  See also Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 95 (3d Cir. 1992); Smith v. Hartford Ins. Group, 6 F.3d 131, 136 (3d Cir. 1994).  These cases have summarized the congressional reasoning for no automatic vesting: "[t]o require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income."  Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1160 (3d Cir. 1990).  Courts, including the Third Circuit, have followed Congress' lead and respected the "need for flexibility with respect to an employer's right to change

medical" and other welfare benefit plans.  Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co., 188 F.3d 130, 138 (3d Cir. 1999).  Thus, a plan participant's right to an employee welfare benefit vests only according to the terms of the plan.  See Unisys, 58 F.3d at 902.

In order for an employee welfare benefit to vest, the conditions for vesting must be clear on the face of the plan.  Thus, to determine when an employee welfare benefit vests, the Court must "examine the plan documents."  Unisys, 58 F.3d at 902.  The Third Circuit has reasoned that since employee welfare benefits are "[e]xtra-ERISA commitments" the vesting language "must be found in the plan documents and stated in clear and express language."  Id.  Furthermore, the "plan participant bears the burden of proving, by a preponderance of the evidence, that the employer intended the welfare benefits to be vested."  Id.  Thus, in this case, Plaintiffs bear the burden of proving that the death benefit vested according to clear and express language contained in the Lucent Plan.

1. Vesting of Benefit According to Plan Documents

Plaintiffs direct the Court's attention to several documents published by AT&T and Lucent that allegedly set forth the vesting guidelines for the death benefit.  First, Plaintiffs claim that AT&T prioritized benefits under the plan and in doing so established the death benefit as vesting upon an employee's eligibility for retirement.  According to Plaintiffs' argument, ERISA Section 4044 required AT&T to prioritize the benefits.  29 U.S.C. § 1344(a).  Such prioritization of benefits pursuant to Section 4044 does not create vesting rights; but rather "insurance" upon termination of a plan.  See Mead Corp. v. Tilley, 490 U.S. 714, 723 (1989) (holding that ERISA Section 4044 does

not create new entitlements but only "insurance for benefits created" in Title I); see also Ashenbaugh, 854 F.2d at 1528.  Therefore, Defendants' act of categorizing the death benefit as a Category Two benefit has no bearing on when a plan participant's entitlement to the death benefit vested.  Furthermore, because the Plan itself was not terminated, Section 4044 offers Plaintiffs no protection.

Next, Plaintiffs' argue that language in the Summary Plan Description ("SPD") demonstrates that the death benefit vested upon a plan participant's eligibility for retirement.  Plaintiffs are correct that if there is a conflict in the language contained in a SPD and the plan documents then the SPD controls.  Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365, 378 (3d Cir. 2003).  However, the language in the AT&T and Lucent SPDs does not "clear[ly] and express[ly]" indicate that the death benefit vested upon eligibility for retirement.  Unisys, 58 F.3d at 902.  Rather, the language Plaintiffs cite merely defines the death benefit and states who is eligible.[3]  Furthermore, other provisions in the SPD make clear that plan participants did not have a vested right to the death benefit upon retirement because the occurrence of subsequent events could serve as grounds for Lucent to deny payment of the benefit.  For example, the SPD contained in Exhibit 14 states that "[n]o Death Benefits, however, may be payable in the event a suit for damages or other legal action is brought against the Company outside the provisions of this Plan on account of the death of an employee."  Pl. Ex. 14 at D010406.  While this

---

[3]    The SPD published by AT&T, contained in Exhibit 13, states that "[a] benefit equal to one year's pay at retirement will be paid to the qualified beneficiary of an employee who retires with a Service or Disability Pension."  Pl. Ex. 13 at D001907.  Contrary to Plaintiff's contentions, this language does not define when vesting occurs.  See also Pl. Ex. 16 at D010487; Pl. Ex. 19 at D002258-259.

exclusion is not applicable in this case, it shows that Plaintiffs' right to the death benefit was not

vested upon retirement, but it could be stripped away if Plaintiffs engaged in particular conduct,

namely, filing suit against Lucent.  Additionally, the SPD language makes clear that the benefit will

be paid only if a qualified beneficiary survives the plan participant.[4]  The presence of these

conditions on plan participants' eligibility for the death benefit underscore the fact that there was no

automatic vesting language and, further, that employees' entitlement to the death benefit did not vest

upon retirement.  The benefit only vested when the plan participant died and was survived by

qualified beneficiaries.

Finally, Plaintiffs' argue that their right to the death benefit vested pursuant to clear language

contained in the Employee Benefits Agreement ("EBA").  First, it is not clear that the EBA is even

a Plan document. Plaintiffs ask this Court to follow the Fifth Circuit's example, citing Halliburton

Company Benefits Committee v. Graves, 463 F.3d 360 (5th Cir. 2006) for the proposition that a

merger agreement may amend the terms of an employee benefits plan.  Regardless of whether the

EBA amended the terms of the employee benefits plan, the clause in the EBA stating that Lucent

assumed AT&T's liabilities with regards to transferred retirees does not contain clear and express

vesting language.  Pl. Ex. 11 at D001436.  Neither this language nor any other language cited by

Plaintiffs clearly and expressly states the vesting requirements for the death benefit.  Therefore, the

death benefit did not become vested pursuant to any of these documents.

---

[4]     "If there is no beneficiary who qualifies for a mandatory payment, payment of a
        Death Benefit to other dependent relatives may be authorized by the Employee
        Benefits Committee."   Pl. Ex. 14 at D010406.

18

2.      Vesting of Benefit by Transfer of Funds

Plaintiffs also argue that the death benefit vested when Lucent transferred excess pension assets pursuant to I.R.C. Section 420.  Specifically, Plaintiff cites language in the Lucent Plan: "[a]ccrued pension benefits for Participants and beneficiaries become nonforfeitable."  Pl. Ex. 12 at D001692.  This language is not grounds for concluding that the death benefit vested.  First, this is not clear and express language of vesting as is required by controlling precedent.  Unisys, 58 F.3d at 902.  Second, as discussed above, the death benefit is not accrued under the statutory definition because it is not an annual benefit paid at normal retirement age.  Therefore, Lucent's transfer of excess pension assets did not cause the death benefit to vest.

Based on Plaintiffs' complaint and the plan documents, it is apparent that dismissal is appropriate as to Plaintiffs' Count II.  This Court may consider the plan documents in dismissing Count II pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' claims are based on those documents.  Pension Benefit Guar. Corp., 998 F.2d at 1196.  It is clear on the face of these documents that the death benefit was not vested and its elimination did not violate ERISA's anti-cutback rule.

**E.      Contract Claims Based on Federal Common Law**

Arguing that the pension plan is a unilateral contract, Plaintiffs seek relief pursuant to federal common law.  Plaintiffs claim that the pension plan is an offer which the employee accepts by performance, binding the employer to the contract's terms.  Under this theory, the death benefits would vest upon an employee's performance.

19

Plaintiffs' unilateral contract theory is unavailing for several reasons. First, the Supreme Court recently ruled that it is inappropriate for the courts to employ federal common law to supplement ERISA. Most recently, in Hughes Aircraft, the Supreme Court held that because ERISA " 'is a comprehensive and reticulated statute and is enormously complex and detailed' it should not be supplemented by extratextual remedies, such as the common-law doctrines advocated by respondents." 525 U.S. at 447 (citing Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980) and Mertens v. Hewitt Assoc., 508 U.S. 248, 262 (1993) (internal citations omitted)). Just this year, the Third Circuit reiterated this point in Hooven v. Exxon Mobil Corporation, Nos. 04-3773, 05-1610, 2006 WL 2988116,*5 (3d Cir. Oct. 20, 2006), noting that "[a]lthough we occasionally employ unilateral contract concepts in ERISA cases, we do so only where 'the asserted unilateral contract is based on the explicit promises in the ERISA plan documents themselves.' Unilateral contract principles may not operate to create extra-ERISA causes of action for plan benefits." Thus, as stated above, no relief pursuant to unilateral contract principles is available in this case because there are no explicit, non-revocable promises to the death benefit contained in the ERISA plan documents.

Secondly, the majority of cases cited by Plaintiffs are from other circuits and involved top hat plans, not welfare benefits like the case here.[5]   Unlike typical pension and employee welfare

_____

[5]        Plaintiffs' reliance on Burch v. Firestone Tire and Rubber Co., 838 F.2d 134, 145-47 (3d Cir. 1987) and  Amatuzio v. Gandalf Sys. Corp., 994 F.Supp. 253, 266 (D.N.J. 1998) to show that the Third Circuit and the District of New Jersey have applied unilateral contract principles to employee welfare plans is unpersuasive. Both of these plans involve severance plans, relating to length of service and a form of wages. Such a benefit is distinct from the death benefit at issue here.

benefit plans, top-hat plans are designed to compensate highly paid employees.  Thus, some courts have carved out an exception for top-hat plans, reasoning that because they are more akin to unilateral contracts, federal common law contract principles are applicable.  See <u>Goldstein v. Johnson & Johnson</u>, 251 F.3d 433, 442 (3d Cir. 2001).  Therefore, the cases cited by Plaintiffs to support the unilateral contract theory of relief are distinguishable from the facts here and thereby unpersuasive.

Finally, even if the Court applies federal common law contract principles and construes the plan as a unilateral contract, it is still subject to the Plan's reservation of rights clause.  Plaintiffs may have accepted the Plan's terms by performance; however, they accepted all the Plan's terms, including the clause reserving Defendants' right to alter plan benefits in the future.  Therefore, Defendants were merely exercising their rights under the contract that Plaintiffs accepted and agreed to.

Dismissal is appropriate as to Plaintiffs' Count IV because no relief can be granted upon the face of Plaintiffs' complaint due to the fact that federal common law unilateral contract principles may not be grounds for relief on pension and retirement plans that fall within the ambit of ERISA.

## IV.   CONCLUSION

For the reasons stated above, it is the decision of the this Court that Defendants' motion to dismiss is granted.  Additionally, Plaintiffs' motion to substitute a party is rendered moot and is thereby denied.  An appropriate Order accompanies this Opinion.

S/  Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       November 27, 2006
Orig.:      Clerk
cc:         Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File

22